CLERK'S OFFICE U.S. DIST
AT CHARLOTTESVILE,
FILED
MAR 15 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:10CR00025 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| DON FRANCIS SIMONPIETRI, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a ten-count Indictment charging defendant in Count One with not possessing a Federal Firearms License, with others known and unknown, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree together and with each to violate Title 18, United States Code, Section 922(a)(1)(A), and in furtherance of the conspiracy and to effect the objects of the conspiracy, sold and purchased for resale numerous firearms, all in violation of Title 18, United States Code, Sections 371 and 922(a)(1)(A). Count Two charged defendant with not being a licensed dealer of firearms, did willfully engage in the business of dealing in firearms, all in violation of Title 18, United States Code, Section 922(a)(1)(A). Count Three charged defendant with knowingly aiding and abetting in the sale of a firearm, knowing and having reasonable cause to believe that the purchaser had been convicted of a crime punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Sections 2, 922(d)(1) and 924(a)(2). Count Four charged defendant with knowingly aiding and abetting in the sale of a firearm, knowing and having reasonable cause to believe that the purchaser had been convicted of a crime punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Sections 2, 922(d)(1) and 924(a)(2). Count Five charged defendant with knowingly disposing of a firearm, knowing and having

reasonable cause to believe that the person had been convicted of a crime punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Section 922(d)(1) and 924(a)(2). Count Six charged defendant with knowingly possessing a machinegun, all in violation of Title 18, United States Code, Section 922(o) and 924(a)(2). Count Seven charged defendant with knowingly possessing a machinegun, all in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2). Count Eight charged defendant with knowingly receiving and possessing a firearm, not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26, United States Code, Sections 5841, 5845, 5861(d), and 5871. Count Nine charged defendant with knowingly receiving and possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26, United States Code, Sections 5841, 5845, 5861(d) and 5871. Count Ten charged defendant with knowingly receiving and possessing a firearm, not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26, United States Code, Sections 5841, 5845, 5861(d) and 5871.

On March 14, 2011, a plea hearing was conducted before the undersigned, and pursuant to the terms of the Plea Agreement, the defendant entered a plea of guilty to Counts Two and Four of the Indictment. The defendant was informed that in exchange for his plea of guilty to Counts Two and Four, the government will move that he be dismissed from the remaining counts of the Indictment.

The defendant was placed under oath and testified his full legal name is Don Francis Simonpietri, he was born on May 9, 1946, and he attended school up to the eighth grade. The defendant stated that he can generally read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant testified that he was not under the influence of alcohol, medicine, or any drug. The defendant stated that he had no other

physical or mental condition which impaired his ability to understand the nature of the proceedings being held. The defendant testified that he had received a copy of the Indictment pending against him, and that he had fully discussed the charges therein and any defenses thereto, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant testified that he understood that Counts Two and Four are felonies, and if his plea is accepted, he will be adjudged guilty of those offenses.

The defendant acknowledged that the maximum statutory penalty for Count Two is a $250,000 fine and/or imprisonment for a term of five years, together with a term of supervised release. The defendant acknowledged that the maximum statutory penalty for Count Four is a $250,000 fine and/or imprisonment for a term of ten years, together with a term of supervised release. The defendant was informed that parole has been abolished, and that if he is sentenced to prison, he will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that he understood that, upon conviction, he will be required to pay a special assessment of $100 per felony count.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that he understood that the eventual sentence imposed may be different from

any estimate his attorney had given him, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant acknowledged it was agreed that the 2010 edition of the United States Sentencing Guidelines was applicable to his offenses. The defendant further acknowledged that, in the Plea Agreement, it had been stipulated that the following Sentencing Guidelines were applicable to his conduct: 2K2.1(a) and 2K2.1(b)(1). The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the Plea Agreement, the government would recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government would move that he be given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant also stated that he understood that even if he fully cooperates with law enforcement, the government is under no obligation to file a motion to reduce his sentence for his substantial assistance, and if the government makes the motion, it is up to the court to determine how much of a reduction, if any, should be made. The defendant stated that he was aware that if he fulfilled his obligations under the Plea Agreement the government would recommend a sentence within the applicable guideline range.

The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case. The defendant also acknowledged his consent to the abandonment, official use or destruction of anything seized by law enforcement during the investigation of his case. The defendant agreed that he had consented to the forfeiture of assets as set forth in the plea agreement and agreed order of forfeiture, and that such a forfeiture of

4

property is proportionate to the degree and nature of the offenses he committed. The defendant confirmed his agreement to pay restitution for the entire scope of his criminal conduct, and that he would make good faith efforts toward payment of any mandatory fines, assessments and restitution imposed. The defendant agreed he would submit a financial statement, if called upon to do so, and he would not convey anything of value without authorization from the government. The defendant acknowledged his monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify on his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant testified that he understood that under the terms of the agreement he was waiving rights to appeal or collaterally attack his conviction or sentence. The defendant stated he was aware that the government had retained its rights to appeal.

The defendant also testified that he understood that he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the

right to possess a firearm. The defendant stated that he was satisfied with the advice and representation given to him in this case by his counsel, and that he believed the representation had been effective. The defendant asked the court to accept his plea of guilty to Counts Two and Four.

**THE GOVERNMENT'S EVIDENCE**

The evidence presented in the government's Statement of Facts is as follows: The offenses described below occurred within the Western District of Virginia. This Statement of Facts briefly summarizes the facts and does not contain all of the information obtained during this investigation.

In mid-2009, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Front Royal Police Department ("FRPD") initiated an investigation into reports of unlawful firearm trafficking at Andrick's Flea Market ("Flea Market") located at 490 Commerce Avenue, Front Royal, Virginia. Between September and October, 2009, numerous controlled purchases of firearms were made using three Virginia State Police ("VSP") informants, all of whom were convicted felons and thereby prohibited from purchasing or possessing firearms. As a result of the investigation, the FRPD arrested numerous individuals including Don Francis Simonpietri and Charles Shipe.

Over the course of the investigation, law enforcement determined that Simonpietri had been dealing in firearms despite the loss of his license to do so in July of 2005. Simonpietri acquired a significant private collection of firearms in 2005 in connection with the ATF's license revocation proceedings, but following the license revocation, Simonpietri was not authorized to repetitively acquire new firearms inventory and sell that inventory at resale for a profit. Simonpietri nonetheless had continued to devote time and attention to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. The following is a summary of the evidence.

On September 12 and 13, 2009, Charles Shipe, working on behalf of Don Simonpietri, sold multiple firearms to different Virginia State Police ("VSP") Confidential Informants ("CI"). These sales were made despite the CI having informed Shipe that he was prohibited by law from making such a purchase. Although Simonpietri may not have been aware that the guns were being sold to prohibited persons, the guns being sold were from Simonpietri's inventory and Shipe was paid by Simonpietri for each gun he sold.

On September 27, 2009, two CI's, accompanied by an undercover officer, returned to the Flea Market. One of the CI's purchased a Bushmaster AR-15 .233 caliber assault rifle with magazine from Simonpietri.

On October 4, 2009, two CI's again approached Simonpietri at the flea market. The encounter was observed and videotaped by an undercover FRPD Sergeant. They discussed a Smith & Wesson 9mm semi-automatic pistol and CI-1 asked about paperwork being filed on the weapon. Simonpietri asked if CI-1 had a felony. CI-1 answered affirmatively, and Simonpietri stated, "I can't sell that." CI-1 then suggested that Simonpietri sell the gun to CI-2, who was not a prohibited person. Simonpietri agreed, however, the physical exchange of the money and weapon was between CI-1 and Simonpietri. This represents an illegal "straw-purchase" transaction and supports a conviction of Count Four.

On October 14, 2009, Simonpietri, Shipe and others were arrested by FRPD and charged with a variety of state offenses. Search warrants were executed at SIMONPIETRI's Front Royal Pawn Shop and his residence. There were 1359 firearms recovered from the Pawn Shop and 48 firearms recovered from his home (A photographic sample of the seized firearms is attached as Exhibit A to the Statement Of Facts). Of these 1407 firearms, approximately 300 were returned to

Simonpietri because they did not meet the federal definition of a firearm (e.g. black powder or civil war relics). Many of the guns seized were tagged for resale.

Agents conducted a trace on many of the guns seized from Simonpietri's home and pawn shop in an attempt to determine their origin and the timeframe in which Simonpietri would have come into possession of them. Specifically, traces were conducted on each of the guns that were tagged for resale by Simonpietri after he lost his license in July of 2005 or firearms that were not tagged for sale but had legible serial numbers (totaling approximately 400).

Through the post-arrest seizure and tracing of firearms, it was determined that Simonpietri had acquired a substantial number of firearms after he lost his license in July 2005. During this time period Simonpietri engaged in other conduct reflecting his continued involvement in the business of dealing in firearms through the repetitive purchase and resale of firearms. At times when he was unavailable, Simonpietri authorized agents, including Shipe, to make firearm transactions on his behalf. During periods after July 2005 Simonpietri's pawn shop maintained an advertisement listing which listed "guns" as part of the inventory available to the public. The Government made several controlled purchases of firearms from Simonpietri's inventory (through Shipe as well as directly from Simonpietri) at the Front Royal flea market in summer and fall of 2009. The parties have stipulated that between July 2005 and October 2009, Simonpietri sold for a profit between 8 and 24 firearms out of the firearms inventory that he had acquired after July 2005.

The sale tags on the firearms were coded to reflect the date Simonpietri purchased the firearm and the price he paid and the price for which he valued the firearm. The information on these tags provides additional evidence that Simonpietri was actively engaged as a dealer in firearms despite having lost his license to be so engaged.

As set forth in the plea agreement, Simonpietri has agreed to the forfeiture of the seized firearms and the 2004 Mustang. The firearms are forfeitable as they represent the inventory of the unlawful business. The 2004 Mustang was used by Simonpietri as the vehicle used to transport many of the firearms from his home or pawn shop to the flea market for sale. The use of this vehicle to facilitate the offense makes it subject to forfeiture to the United States.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of his plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Counts Two and Four of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts Two and Four of the Indictment. The undersigned further RECOMMENDS that the court enter the forfeiture order tendered during the plea proceedings in accordance with the request of the parties under the plea agreement.

The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for June 21, 2011 at 10:00 a.m. before the presiding District Judge in Harrisonburg.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

March 15 2011
Date